**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MARK E. LYMAN and DIANA LYMAN,

                                   Plaintiffs

          v.                                             No. 06-CV-1109
                                                            (LEK/DRH)
CITY OF ALBANY; OFFICE OF
CORPORATION COUNSEL; JERRY
JENNINGS, Mayor; JAMES TURLEY, Chief;
JAMES TUFFEY, Chief; DANIEL J.
COLONNO, Lieutenant; DETECTIVE BREEN;
VICTOR E. PIZZOLA, Detective; ANTHONY
GUINTA; ALBANY POLICE DEPARTMENT;
THOMAS MARTIN; JOHN DOE; and JANE
DOE,
                                   Defendants.
_____

**APPEARANCES:**                         **OF COUNSEL:**

JOHN A. ARETAKIS, ESQ.
Attorney for Plaintiffs
353 East 54th Street
New York, New York 10022

REHFUSS, LIGUORI & ASSOCIATES,          STEPHEN J. REHFUSS, ESQ.
   P.C.
Attorney for Defendants
40 British American Boulevard
Latham, New York 12110

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### MEMORANDUM-DECISION AND ORDER

     Plaintiffs Mark E. and Diana Lyman ("Lymans") allege in this action that defendant

City of Albany, its mayor, and various individual police officials deprived them of their

constitutional rights in connection with activities surrounding the Lymans' participation in

protests at a local church in 2005 and 2006.  The Lymans, who are husband and wife, seek

compensatory and punitive damages as well as costs and attorney's fees in thirteen causes

of action alleging deprivations of their rights under the First, Fourth, Fifth, and Fourteenth

Amendments in violation of 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e et seq.; and state law.  Am. Compl. (Docket No. 3) at ¶¶ 24, 66-181.

Presently pending is defendants' motion[1] to disqualify the Lymans' attorney, John A.

Aretakis, Esq., ("Aretakis") from representing the Lymans in this case pursuant to the

"advocate witness" prohibition of Disciplinary Rule ("DR") 5-102(A) of the Code of

Professional Responsibility.  Docket No. 6.  The Lymans oppose the motion.  Docket No.

13.  For the reasons which follow, defendants' motion is denied without prejudice.


## I. Background

During the time periods at issue in this case, Mark Lyman was the Director of the

Capital Region Chapter of the Survivors Network of those Abused by Priests (SNAP).  M.

Lyman Aff. (Docket No. 12) at ¶ 4.  Mark Lyman, who identifies himself as a child victim of

sexual abuse by clergy from the Albany Diocese of the Roman Catholic Church, contends

that "[t]here are a significant number of predatory priests within [the Albany] diocese that

have not been charged or properly removed" from their positions.  Id. at ¶¶ 4, 6.  Mark

Lyman further contends that one such priest was Fr. Daniel Mahar of Holy Cross Church

("church") in Albany.  Id. at ¶ 4.  In May 2005, SNAP began conducting periodic protests,

generally on Sundays, at the church over Fr. Mahar's continued presence there.  Am.

Compl. at ¶ 28.  On September 2, 2005, Fr. Mahar was cleared of charges of abuse by the

---

[1]The motion is made on behalf of all defendants except Thomas Martin, John Doe, and Jane Doe.  Notice of Motion (Docket No. 6(1)) at 1.

Diocesan Sexual Misconduct Review Panel and the bishop and was permitted to continue serving as a priest at the church.  M. Lyman Aff. at ¶¶ 4-5; Am. Compl. at ¶ 33.

SNAP determined to continue weekly protests at the church over Fr. Mahar's ongoing presence there.  Am. Compl. at ¶ 27.  On September 6, 2005, a temporary restraining order (TRO) was issued by a state court prohibiting the protesters from demonstrating within 100' of the entrances to the church and its adjoining school.  Decision & Order dated Jan. 18, 2006 (Docket No. 6(4)) at 2.  The TRO named Aretakis and "John Doe" as defendants.  Id. at 1.  Aretakis had represented a number of individuals who had alleged that they were child victims of sexual abuse by priests in the Albany diocese and he had personally participated in the protests to date at the church.  Id. at 1.  Mark Lyman was not originally a defendant in the action but later joined as an intervenor-defendant.  Id. Aretakis had represented Mark Lyman prior to the church protests and has continued to represent him on various matters throughout that period to date.  M. Lyman Aff. at ¶¶ 9-18.[2] The TRO was extended to a temporary injunction on January 18, 2006 based in part on testimony from church members and employees that Aretakis employed methods of protest that were "aggressive, confrontational and hostile."  Decision & Order at 72.

From after September 6, 2005 through April 9, 2006, the SNAP protests were conducted at the church each week on Saturdays and Sundays.  Transcript of M. Lyman Testimony at 50-h Hrg. on Mar. 16, 2006 (Docket No. 6(5)) at 37.  Aretakis was present for

---

[2]Aretakis' representation of Mark Lyman included the filing of at least two notices of claims, including those at issue in this case, against the Albany police for alleged violations of Mark Lyman's rights during the demonstrations at the church.  M. Lyman Aff. at ¶ 14.  Such notices of claim are necessary preconditions to commencing an action against a municipal entity under New York law.  See N.Y. Gen. Mun. Law art. 4 (McKinney 1999 & Supp. 2006).

approximately half of those occasions. Id. at 41.  Aretakis, however, was not present for the demonstration on Palm Sunday, April 9, 2006.  M. Lyman Aff. at ¶ 11.  At the demonstration on that date, Mark Lyman was arrested by Albany police for violating the terms of the injunction.  Id.  The police searched Mark Lyman's vehicle and found an empty pistol holster.  Am. Compl. at ¶ 177.  Mark Lyman advised the police that he owned a pistol for which he possessed a lawful permit.  Id. at ¶ 178.  Mark Lyman was taken into custody, Aretakis was called at his residence in New York City by another SNAP member, and Aretakis traveled to Albany where he was told that Mark Lyman would not be released until he produced the original pistol permit. M. Lymnan Aff. at ¶ 12.  Aretakis then drove to the Lymans' residence in Saratoga County, obtained the original pistol permit, returned to Albany to produce it to the police, and Mark Lyman was then released on bail.  Id. at ¶ 13. This action was commenced on September 15, 2006.  Compl. (Docket No. 1).


## II. Discussion

A motion for the disqualification of counsel is addressed to the sound discretion of the district court.  Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72-73 (2d Cir. 1990); DeFazio v. Wallis, 459 F. Supp. 2d 159, 163 (E.D.N.Y. 2006).  The Second Circuit disfavors such motions because they are often used for purely tactical reasons.  Lamborn v. Dittmer, 873 F.2d 522, 531 (2d Cir. 1989); Kubin v. Miller, 801 F. Supp. 1101, 1112 (S.D.N.Y. 1992). The party seeking disqualification, therefore, bears a heavy burden before an attorney will be removed from a case.  Evans v. Artek Sys. Corp., 715 F.2d 788, 794 (2d Cir. 1983); Vegetable Kingdom, Inc. v. Katzen, 653 F. Supp. 917, 921 (N.D.N.Y. 1987).  Courts recognize the importance of a litigant being represented by counsel of his or her choosing.

4

Tisby v. Buffalo Gen. Hosp., 157 F.R.D. 157, 163 (W.D.N.Y. 1994).  The delay and expense caused by the disqualification of an attorney are factors of considerable significance in deciding such a motion.  Clark v. Bank of N.Y., 801 F. Supp. 1182, 1196-97 (S.D.N.Y. 1992).

In considering motions to disqualify counsel, courts in this district follow the New York State Lawyer's Code of Professional Responsibility.[3]  N.D.N.Y.L.R. 83.4(j).[4]  DR 5-102 of that Code provides for the withdrawal of counsel when the lawyer must become a witness. The pending disqualification motion is based on DR 5-102(A), which provides:

> A lawyer shall not act, or accept employment that contemplates the lawyer's acting, as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client.[5]

The disciplinary rules, however, "need not be rigidly applied."  Renner v. Townsend Fin. Servs. Corp., No. 98 Civ. 926(CSH), 2002 WL 1013234, at *6 (S.D.N.Y. May. 20, 2002). Thus, DR 5-102(A) serves to provide guidance to a court in the exercise of its discretion. See Occidental Hotels Mgmt. B.V. v. Westbrook Allegro L.L.C., 440 F. Supp. 2d 303, 313

---

[3]N.Y. Jud. Law App. (McKinney 2003); N.Y. Comp. Codes R. & Regs., tit. 22, § 1200.1 et seq. (2006).

[4]Before January 1, 2001, this district followed the American Bar Association Model Code of Professional Responsibility.  See N.D.N.Y.L.R. efff. Jan. 1, 2001.

[5]DR 5-102(C) similarly provides:

> If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client, the lawyer shall not serve as an advocate on issues of fact before the tribunal . . . .

(S.D.N.Y. 2006).

The standard for disqualification, therefore, is whether the attorney "ought to testify" on his client's behalf. An attorney "ought" to testify when his or her testimony would be significantly useful to his client and is necessary to the case. Purgess v. Sharrock, 33 F.3d 134, 144(2d Cir. 1994); Crews v. County of Nassau, No. 06-CV-2610, 2007 WL 316568, at *3 (E.D.N.Y. Jan. 30, 2007). "Testimony may be relevant and even useful but still not strictly necessary." Computer Assocs. Int'l, Inc. v. Computer Automation, Inc., 678 F. Supp. 424, 430 (S.D.N.Y. 1987) (quoting S&S Hotel Ventures v. 777 S.H. Corp., 69 N.Y.2d 437, 446 (1987)). Determining whether testimony would be significantly useful requires consideration of the significance of the matters that would be involved, the weight of that testimony, and the potential availability of similar testimony from other sources. Crews, 2007 WL 316568, at *3. Purely cumulative testimony does not warrant disqualification. Kubin, 801 F. Supp. at 1113 (citations omitted).

If an attorney's testimony would be significantly useful, the attorney "should be disqualified regardless of whether he will actually be called." Lamborn, 873 F.2d at 531; Norman Reitman Co., Inc. v. IRBBrasil Resseguros S.A., No. 01 Civ. 0265(RCC), 2001 WL 1132015, at *3 (S.D.N.Y. Sept. 25, 2001). The rule does not permit a client to waive his attorney's testimony if it would be significantly useful in order to retain him as counsel. Munk v. Goldome Nat. Corp., 697 F. Supp. 784, 787 (S.D.N.Y. 1988). Thus, a client "cannot choose between the attorney's testimony and [the attorney's] representation." Tapers v. Local 530 of Operative Plasterers & Cement Masons Int'l Assoc., No. 93 Civ. 0154(JG), 1996 WL 1088933, at *4 (E.D.N.Y. Oct. 24, 1996) (quoting MacArthur v. Bank of N.Y. , 524 F. Supp. 1205, 1209 (S.D.N.Y. 1981)).

6

Defendants identify numerous matters alleged in the amended complaint for which they contend Aretakis ought to be called as a witness by the Lymans.  For example, defendants contend that it was Aretakis' actions at demonstrations that led to the issuance of the TRO and that his testimony would be necessary concerning the justification for police presence during the demonstrations.  Defs. Mem. of Law (Docket No. 6(2)) at 6-7.  Defendants also point out that Aretakis was present for and a participant in many of the events concerning the demonstrations alleged in the amended complaint.  Id. at 7.  Defendants further contend that Aretakis was contacted after Mark Lyman's arrest on April 9, 2006, negotiated with the police over production of the original pistol permit and Mark Lyman's release, and was the person who retrieved and presented the original pistol permit to obtain Mark Lyman's release.  Id. at 7-8.

As to all such factual matters, however, it is unclear at this early stage of the proceedings[6] which, if any, of the events to which Aretakis was a witness will ultimately remain contested issues at trial.  The parties may well agree to the existence of certain facts which would obviate the necessity for Aretakis' testimony on those matters.  Other issues may be dismissed from the litigation of the case through voluntary dismissal, defendants' presently pending motion to dismiss a portion of the amended complaint (Docket No. 4), or on a motion for summary judgment pursuant to Fed. R. Civ. P. 56.  Thus, at this stage the

---

[6]The action was commenced on September 15, 2006.  Docket No. 1.  An amended complaint was filed on November 14, 2006.  Docket No. 3.  Defendant filed a motion to dismiss a portion of the amended complaint on December 1, 2006, which is presently pending, and this motion was filed on December 13, 2006.  Docket Nos. 4, 6.  A scheduling conference pursuant to Fed. R. Civ. P. 16 was held on January 25, 2007 resulting in the issuance of a scheduling order.  Docket No. 16.  Defendants have not yet answered, the initial disclosures required by Fed. R. Civ. P. 26(a)(1) have not yet taken place, and discovery has not yet begun.

scope of the Lymans' claims which will remain at issue for trial has not been resolved nor

have the factual issues which will be in dispute at trial.  Absent such determinations, it

would require undue speculation to determine whether issues will remain for trial as to

which Aretakis ought to testify.

Second, while it is readily apparent from the record in this case that Aretakis was

personally and directly involved in many of the allegations of fact in the amended complaint,

it also appears likely that others were present for and likely witnessed many, if not all, of

those same events.  Whether those witnesses are available to testify in this case and, if so,

what their testimony will be, is presently unknown.  The availability and substance of such

testimony is a matter for discovery.  Only after those witnessed are identified and their

testimony discovered can it be determined with any degree of reliability whether Aretakis'

testimony as to any factual issue would be significantly useful to the Lymans or merely

cumulative.  It would also facilitate a determination to know whether Aretakis' involvement in

matters at issue in the trial was so inextricably intertwined in the events at issue that, even if

other witnesses are available to testify, the absence of Aretakis' testimony might itself

become an issue at trial.

For these reasons, then, defendants' motion to disqualify Aretakis is premature.  No

reason appears why Aretakis should not be permitted to continue to represent the Lymans

through the completion of discovery and dispositive motions.  At that stage a fair

determination can be made as to whether Aretakis "ought to be called as a witness on

behalf of" the Lymans.  See A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 160 F. Supp.

2d 657, 665 (S.D.N.Y. 2001) (following the "great weight" of authority among district courts

which "permitted attorneys who were potential witnesses at trial to continue to represent

their clients during pre-trial proceedings.") (collecting cases); <u>Conigliaro v. Horace Mann</u>

<u>Sch.</u>, No. 95 Civ. 3555, 1997 WL 189058, at *4 (S.D.N.Y. Apr. 17, 1997) (finding no basis to

disqualify an attorney under DR 5-102 from representing a client prior to trial).[7]

### III. Conclusion

For the reasons stated above, it is hereby

**ORDERED** that defendants' motion to disqualify plaintiffs' counsel (Docket No. 6) is

**DENIED** without prejudice.

**IT IS SO ORDERED.**

DATED:  February 12, 2007
        Albany, New York

United States Magistrate Judge

---

[7]This conclusion finds additional support in the American Bar Association Model
Rules of Professional Conduct.  Rule 3.7(a) of those rules states that "[a] lawyer shall not
act as advocate <u>at a trial</u> in which the lawyer is likely to be a necessary witness." <u>ABA</u>
<u>Model Rules of Prof. Conduct (2006)</u>, Rule 3.7 (visited Feb. 9, 2007)  <http://www.
abanet.org/cpr/mrpc/rule_3_7.html> (emphasis added); <u>see also</u> <u>ABA Model Code of Prof.</u>
<u>Responsibility (1983)</u>, DR 5-102(A) <http://www.law.cornell.edu/ethics/aba/
mcpr/MCPR.HTM> (predecessor version referring to "withdraw[al] from the conduct of the
trial" and "representation in the trial").  Thus, although the New York code is followed in
this district and refers less clearly to proceedings "before the tribunal" rather than "at a
trial," the ABA version provides persuasive authority for the conclusion that at least in the
circumstances presented here, the motion to disqualify Aretakis should be denied at ths
stage.

9