UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARK E. LYMAN, DIANA LYMAN,

                        Plaintiffs,

  -v.-                                                   1:06-CV-1109
                                                                (LEK/DRH)

CITY OF ALBANY, OFFICE OF
CORPORATION COUNSEL, MAYOR
JERRY JENNINGS, CHIEF JAMES TURLEY,
CHIEF JAMES TUFFEY, LIEUTENANT
DANIEL COLONNO, DETECTIVE BREEN,
DETECTIVE VICTOR E. PIZZOLA,
OFFICER ANTHONY GUINTA, ALBANY
POLICE DEPT., THOMAS MARTIN,
JOHN DOE AND JANE DOE.

                        Defendants.
_____

### MEMORANDUM-DECISION AND ORDER[1]

    Plaintiff Mark Lyman ("Plaintiff" or "Lyman"),[2] an activist affiliated with the Survivors Network of those Abused by Priests ("SNAP"), brought this case asserting various civil rights violations stemming from weekly protests in front of the Holy Cross church in Albany, New York. Currently before the Court are Defendants' Motions to dismiss. (Dkt. Nos. 4, 35).

---

    [1] For printed publication by the Federal Reporters.

    [2] Lyman's wife, Diana Lyman, is also named in the Complaint as a plaintiff in this matter. However, the Complaint contain no allegations of injury suffered by Mrs. Lyman and there is virtually no mention of her in the Amended Complaint. Accordingly, the claims contained in the Amended Complaint will be discussed solely with regard to Mr. Lyman.

1

**I. Background**

A.     Facts[3]

Plaintiff, along with other members of SNAP, began protesting outside the Holy Cross Church in Albany, New York, in May 2005. Am. Compl. (Dkt. No. 3) at ¶ 25. In September 2005, the Roman Catholic Archdiocese obtained a restraining order prohibiting any protests within 100 feet of the church. Id. at ¶ 32; Pl.s Aff. (Dkt. No. 22) at ¶ 7. The boundaries of the prohibited area were designated and marked on the sidewalk by members of the Albany Office of Corporation Counsel. Am. Compl. (Dkt. No. 3) at ¶ 42. Defendant Colonno of the Albany Police Department walked the boundaries with Plaintiff, to ensure he was aware of them. Id. at ¶¶ 41-42. The protests were often monitored by members of the Albany Police Department, or videotaped, to ensure compliance with the restraining order. Id. at ¶¶ 36, 39, 43. On April 9, 2006, Plaintiff was arrested for allegedly violating the restraining order. Id. at ¶¶ 50, 61. Plaintiff claims that he was outside the 100 foot area when he was arrested. Pl. Aff. (Dkt. No. 22) at ¶ 26; Id. at ¶ 50 (arguing that arrest was baseless). He also emphasizes that he had occupied that same spot many times before while protesting. Pl. Aff. (Dkt. No. 22) at ¶ 36.

B.     Plaintiff's Claims

Plaintiff alleges a variety of claims stemming from that incident, including intentional infliction of emotional distress, false arrest and imprisonment, malicious prosecution, excessive force, deliberate indifference to serious medical needs, failure to properly train and failure to supervise. Amended Complaint (Dkt. No. 3). Also, Plaintiff alleges violations of his rights under

---

[3] These facts are alleged by the Plaintiff and thus, taken as true for the purposes of this Order only. See, *infra*, Sect. II,a.

2

the First, Fourth and Fourteenth Amendments of the United States Constitution and Title VII of the Civil Rights Act of 1964.  Amended Complaint (Dkt. No. 3).  He names as defendants the City of Albany, the Albany Police Department, the Office of Corporation Counsel, Mayor Jennings, various members of the Albany Police Department and Thomas Martin (collectively, "Defendants"), as well as John and Jane Doe defendants.

## II. Discussion

A.      Standard

In evaluating a motion to dismiss, a court must treat the facts pled by the plaintiff as true. Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994) (noting that court considering a Rule 12(b)(6) motion "must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant").  To survive a motion to dismiss, the facts alleged in a complaint "must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007).  See also Goldstein v. Pataki, –F.3d—, No. 07-2537-cv, 2008 WL 269100, at *4 (2d Cir. Feb. 1, 2008) (dismissing a constitutional claim for failing to make factual allegations which raise a right to relief above the speculative level).  Also, in evaluating a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 127 S.Ct. at 1965 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

B.      Claims Under Title VII of the Civil Rights Act of 1964

Plaintiff's claims for violations of Title VII of the Civil Rights Act of 1964 must be dismissed out of hand because that law has no applicability to the facts of this case.  Title VII applies only to the employment context.  See Burlington N. and Santa Fe Ry. Co. v. White, 126

3

S.Ct. 2405, 2408 (2006). Plaintiff has not alleged that he ever had or sought an employment relationship with the Defendants in this case. Accordingly, Plaintiff's claims under Title VII must be dismissed.

      C.      Claims Under the First Amendment of the United States

Plaintiff alleges that, in connection to weekly protests he conducted outside Holy Cross Church, Defendants illegally videotaped him on several occasions and, on April 9, 2006, falsely arrested him on the grounds of violating a restraining order keeping him 100 feet from the church. Plaintiff appears to argue that Defendants' actions against him violate the First Amendment in that they were retaliation for his protected speech[4]. "[T]he law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006). To assert a claim for retaliation in violation of the First Amendment, a private citizen plaintiff must show that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).

It is undisputed that the First Amendment protects Plaintiff's right to be free of viewpoint specific government restrictions limiting his ability to lawfully assemble. See, e.g. R.A.V. v. City of St.Paul, Minn., 505 U.S. 377, 382 (1992). Accordingly, Plaintiff has an interest protected by the

---

[4] To the extent that Plaintiff alleges that the pursuit or issuance of a temporary restraining order keeping him 100 feet from the Church was a violation of his First Amendment rights, his claims clearly fail because none of the named Defendants were involved in those actions. Instead, the Court understands the Complaint to allege that the arrest and videotaping of Plaintiff were retaliatory acts in violation of his First Amendment rights.

First Amendment. However, the second element of Plaintiff's retaliation claim is not so easily met: Plaintiff has not made any factual allegations linking Plaintiff's expressed viewpoint or his history of opposition to the Catholic Church to his arrest on April 9, 2006 or the alleged videotaping. "[B]ecause the causal link supporting this claim is not self-evident, the plaintiff [has] an obligation to amplify the claims with factual allegations rendering it plausible." Eno Farms Co-op. Ass'n., Inc. v. Corp. for Indep. Living, Civ. No. 3:06cv1983 (AHN), 2007 WL 3308016 (D.Conn. Nov. 30, 2007) (citing Twombly, 127 S.Ct. at 1955) (dismissing a claim for retaliation under the First Amendment in response to a Rule 12(b)(6) motion). Without such allegations, Plaintiff's claim of retaliation does not rise above the purely speculative level required to survive Defendants' Motion to dismiss.

Additionally, with the facts alleged by Plaintiff taken as true and every reasonable inference drawn in Plaintiff's favor, Plaintiff's claim of animus and retaliation on the part of Defendants is not supported. The Complaint states that protests outside Holy Cross Church were held on a weekly basis from May 2005 through April 2006. The Complaint asserts that the Albany Diocese sought and received a restraining order on September 6, 2005, preventing Plaintiff or any other protesters from coming with 100 feet of the church. Plaintiff notes that the Albany Police Department then took steps to enforce the restraining order and Lt. Colonno informed Plaintiff of the terms and boundaries of the restraining order. Am. Compl. (Dkt. No. 3) at ¶¶ 35-42. The Complaint alleges that Defendants' animus can be seen through the "hostile and adversarial manner" of Lt. Colonno on one occasion and the police presence at the Church, which "was intimidating and appeared threatening" to Plaintiffs. Id. at ¶¶ 35, 45. However, these alleged facts do not create an inference of animus towards Plaintiff, let alone the requisite animus against Plaintiff's viewpoint or protected

5

speech.

Despite Plaintiff's allegation that he was not actually in violation of the restraining order when arrested on April 9, 2006, the Amended Complaint does not link this allegedly false arrest to his protected speech, except in the most conclusory way. Accordingly, the Amended Complaint fails to state a cognizable claim of First Amendment retaliation and the claim must be dismissed.

D.      Claims for Conspiracy

"The elements of a Section 1983 conspiracy claim are: (1) an agreement between two or more state actors or a state actor and a private entity (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal, and causing some harm." Peres v. Oceanside Union Free Sch. Dist. 426 F.Supp.2d 15, 24 (E.D.N.Y., 2006) (citing Ciambriello v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002)). Additionally, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." Ciambriello, 292 F.3d at 325 (quoting Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)).

The Complaint contains several general allegations of conspiracy against Defendants. Firstly, its is alleged that "[d]efendants conspired to and did take specific acts to conceal the misconduct perpetrated by Defendants and attempted to block the instituting of complaints of sexual abuse against the Defendants." Am. Compl. (Dkt. No. 3) at ¶ 82. As there are no allegations of sexual abuse against any of the Defendants, Plaintiff presumably intended to allege a conspiracy between the Albany Diocese of the Roman Catholic Church and Defendants. See Id. at ¶¶ 21,23

(stating generally that Defendants took acts on behalf of the Albany Diocese and that Bishop Hubbard of the Albany Diocese was "intimately involved" in the police criminal action). However, the Complaint contains no further details of such a conspiracy, such as whom exactly the agreement was between, when the agreement was made, what the agreement entailed, or what acts may have been taken in furtherance of the agreement.

The Complaint also alleges that "Defendants conspired to have the Plaintiff investigated on false charges, or made false claims against the Plaintiff due to his actions viewed by the Defendants." Am. Compl. (Dkt. No. 3) at ¶ 86. This claim lacks any supporting factual allegations or detail. Because the claims of conspiracy to violate Plaintiff's civil rights are too conclusory, vague, and general to state a claim upon which relief can be granted, they must be dismissed.

E.   Fourth Amendment Claims

Plaintiff asserts a violation of his right to be free from illegal search and seizure, pursuant to the Fourth Amendment of the United States Constitution. The alleged violation stems from the search of Plaintiff's car, allegedly conducted by Defendant Detective Pizzola, following Plaintiff's arrest on April 9, 2006. Am. Compl. (Dkt. No. 3) at ¶ 176.

An officer is entitled to conduct a search of a vehicle incident to arrest to satisfy both security and evidentiary concerns, whether the suspect was arrested in or next to the vehicle. United States v. Thornton, 541 U.S. 615, 620-621 (2004) ("[i]n all relevant aspects, the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle."). The situation currently before the Court is different from Thornton and similar cases, in that the record does not show that Plaintiff was a recent occupant of his vehicle when he was arrested or that a search of the vehicle was likely to

7

produce evidence of his having violated the restraining order. Instead, Defendants argue that the car was within the area forbidden to Plaintiff by the terms of the restraining order and that, given Plaintiff's outspoken antagonism of the Church, security concerns required a search of Plaintiff's vehicle after he had allegedly violated the restraining order.

This argument is compelling; if Plaintiff's car was within the restricted area or if Plaintiff had occupied the car recently before his arrest, Pizzola likely had probable cause to search Plaintiff's car. However, Plaintiff has alleged that he was not within the restricted area on the date of his arrest. Am. Compl. (Dkt. No. 3) at ¶ 50; Pl. Aff. (Dkt. No. 22) at ¶ 26. With this factual allegation taken as true, it cannot be said that the Amended Complaint could not support a claim for violation of Plaintiff's right to be free from unreasonable search and seizure. Accordingly, Defendants' Motion to dismiss Plaintiff's claim that his Fourth Amendment rights were violated by the post-arrest search of his vehicle must be denied.

    F.    Assorted 1983 Claims

The Complaint contains general assertions that Defendants violated Plaintiff's rights secured by the Constitution of the United States, specifically alleging Defendants' excessive force, indifference to Plaintiff's serious medical needs, and failure to train and properly supervise Albany Police Officers. As the following discussion reveals, each of these claims must be dismissed.

        1.    Excessive Force

The Amended Complaint contains an allegation that when Plaintiff was arrested, "excessive force was used." Am. Compl. (Dkt. No. 3) at ¶ 109. Plaintiff alleges that by reason of Defendants' force, "Plaintiff was injured and subjected to physical and mental pain and suffering, emotional distress, embarrassment, humiliation and fear." Id. at ¶ 115. However, the Complaint contains no

factual allegations that detail any force used, why it was excessive, or how Plaintiff was injured. Without more specificity, Plaintiff's allegations do not suffice to state a cognizable claim for excessive force. Such conclusory allegations without factual support cannot survive a motion to dismiss. Goldstein, 2008 WL 269100, at *4. Accordingly, the claim of excessive force must be dismissed.

        2.        Indifference to Plaintiff's Serious Medical Needs

The Amended Complaint also contains an allegation that "[t]he Defendants denied Plaintiff proper medical care for his medical condition and/or injuries," which demonstrated deliberate indifference on the part of Defendants and "could have resulted or did result in further significant injury to" Plaintiff. Am. Compl. (Dkt. No. 3) at ¶¶ 120, 121. As with Plaintiff's claim of excessive force, the Amended Complaint does not contain sufficient factual allegations to "raise a right to relief above the speculative level." Twombly, 127 S.Ct at 965. Without any allegations describing Plaintiff's medical care or injuries, what treatment was denied or any other relevant information, the claim for deliberate indifference must be dismissed.

        3.        Failure to Train and Failure to Supervise

The Amended Complaint alleges that the city of Albany is liable to Plaintiff for failing to properly train its police officers in how to "deal with a situation in which a protester, and/or a handcuffed detainee" is being arrested. Am. Compl. (Dkt. No. 3) at ¶ 128. Additionally, the Complaint alleges that the Albany Police Department has shown deliberate indifference in its failure to properly supervise its police officers, despite incidents of excessive force and/or illegal arrests. Id. at ¶¶ 137-148.

        To succeed on this claim, Plaintiff would eventually have to

9

submit evidence that defendants knew to a moral certainty that the City would confront a given situation; the situation presented the City with a difficult choice or there was a history of its mishandling the situation; and the wrong choice by the City would frequently cause the deprivation of plaintiffs' rights.

Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007). Additionally, a Plaintiff must "establish that defendant breached its duty to act by failing to make meaningful efforts to address the risk of harm to plaintiffs." Id. Even with all inferences drawn in Plaintiff's favor, the Complaint does not contain factual allegations which, if true, would make his eventual right to relief more than purely speculative.

The Complaint does not allege a single incident of excessive force, or articulate how or when police dealt improperly with a situation in which a protestor was being arrested. The only allegations on this point are wholly vague and conclusory. Accordingly, the claims for failure to train and failure to supervise must be dismissed. See Curley, 268 F.3d at 71 ("a municipality cannot be liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights.") (citing Amato v. City of Saratoga Springs, 170 F.3d 311, 320 (2d Cir. 1999)).

4. Excessive Bail

Plaintiff's pleadings also allege a violation of his Eighth Amendment right to be free from the imposition of excessive bail. Am. Compl. (Dkt. No. 3) at ¶ 169. The pleadings establish that, after Plaintiff's arrest for violation of the restraining order, he was released upon posting $400 bail and the presentation of the original copy of his pistol permit. Pl. Aff. (Dkt. No. 22) at ¶ 13. Plaintiff seems to assert that this is excessive both in the amount and in the refusal to accept a fax copy of his pistol permit. Id.

Firstly, the Eighth Amendment is inapplicable to Plaintiff's situation; "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associate with criminal prosecutions." Ingraham v. Wright, 430 U.S. 651, 671 n. 40 (1977). However, if the conduct imposed on Plaintiff can be considered "punishment," then Eighth Amendment scrutiny may be appropriate. Mann v. Meachem, 929 F.Supp. 622, 633 (N.D.N.Y. 1996) (McAvoy, C.J.); Casaburro v. Guiliani, 986 F.Supp. 176, 179-80 (S.D.N.Y. 1997). "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Bell v. Wolfish, 441 U.S. 520, 539 (1979). It is clear that the conditions imposed on Plaintiff are reasonably related to the legitimate governmental objectives of public safety and ensuring the accused's presence at trial.

Even if the conditions of pretrial release in this case were found to constitute punishment and thus require an Eighth Amendment analysis, they would not violate the constitutional prohibition on excessive bail. The function of bail is to allow an accused to be released before trial, while providing the state with adequate assurance that the accused will be present to stand trial. Stack v. Boyle, 342 U.S. 1, 5 (1951). See also 18 U.S.C. § 3142 (noting all the factors that should be taken into account when determining conditions of release). Bail is excessive under the Eighth Amendment when it is "higher than an amount reasonably calculated to fulfill this purpose," based upon the specifics of the case. Id.

Considering the circumstances of the case, including the fact that Plaintiff was arrested on charges of violating a restraining order, 400 dollars could not be considered a constitutionally unreasonable amount. Additionally, the amount of bail was not unattainable, as it is uncontested

11

that Plaintiff was able to secure his release on bail the same day as his arrest.[5]

The nonfinancial condition that Plaintiff produce the original of his pistol permit before being released also does not violate constitutional guarantees. Section 3142 of Title 18 of the United States Code entitles the officer to require the accused to meet certain conditions prior to release on bail, if they determine that the safety of any person or the community may be endangered. 18 U.S.C.A. § 3142(c). These conditions can include restricting the accused's freedom to travel, use of alcohol, or possession of a firearm or requiring the accused to actively seek employment, comply with curfew or report regularly with law enforcement. Id. Although these conditions apply to federal officers rather than the state officer who imposed pretrial release conditions on Plaintiff, the discretion allowed to federal officers in setting these, far more restrictive, conditions to release, shows that the conditions imposed on Plaintiff are not unconstitutionally harsh.

For the foregoing reasons, Plaintiff's Eighth Amendment claim must fail.

G.     Pendant State Law Claims

Plaintiff also asserts several state law claims against Defendants, including negligence, intentional infliction of emotional distress, false arrest, assault, and battery. However, as the related federal claims must all be dismissed, with the exception of Plaintiff's fourth amendment claim as to the post-arrest search of his car, the Court declines to exercise pendant jurisdiction over these claims. The remaining federal claim does not share with Plaintiff's state law claims "a common nucleus of operative fact, such that it would ordinarily be expected that they would all be tried in one judicial proceeding." Robinson v. Via, 821 F.2d 913, 925 (2d Cir. 1987). Accordingly, the

---

[5] To the extent that Plaintiff asserts that his bail was not properly returned to him, that is not a constitutional issue and need not be part of the present analysis.

exercise of pendant jurisdiction over the state law claims in the Complaint would not be appropriate. See id. ("needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.") (quoting Fay v. South Colonie Cent. Sch. Dist., 802 F.2d 21, 34 (2d Cir. 1986)).

      H.     Municipal Liability

Plaintiff included various municipal entities among the Defendants: the City of Albany, the Office of Corporation Counsel and the Albany Police Department.  Municipalities can be held liable under Section 1983 if a municipal policy, evident through a statement, ordinance, regulation, or custom, is the cause of unconstitutional actions taken by municipal employees. Monell v. Dep't of Social Servs., 436 U.S. 658 (1978).  There is no general respondeat superior liability against municipalities. Id. at 691-2.  Additionally, a single incident cannot support liability unless it is proved that the incident "was caused by an existing, unconstitutional municipal policy, which can be attributed to an existing policy maker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985). In the present case, the only potential Constitutional violation contained in the Amended Complaint is the post-arrest search of Plaintiff's car. See, *supra*, Sect. II. E.  The Amended Complaint does not contain any factual allegations linking the search to a municipal policy, or a policy maker. Accordingly, all claims against the municipal Defendants (including the Defendant officers in their official capacities) will be dismissed. See Hafer v. Melo, 502 U.S. 21, 25 (1991); Frank v. Relin, 1 F.3d 1317, 1326 (2d Cir. 1993).

### III. Conclusion

As the foregoing discussion reveals, Defendants' Motions to dismiss are to be granted in every respect, except as to Plaintiff's Fourth Amendment claim, with regard to the post-arrest search

of his vehicle. As the only Defendant alleged to have participated in this search is Detective Victor E. Pizzola, all claims against the other Defendants will be dismissed.

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendants' Motion to dismiss (Dkt. No. 4) is **DENIED** as to Plaintiff's claim that the post-arrest search of his vehicle violated the Fourth Amendment; **but otherwise GRANTED in its entirety**; and it is further

**ORDERED**, that all claims against all Defendants, with the exception of Detective Victor E. Pizzola, in his individual capacity, are **DISMISSED**; and it is further

**ORDERED**, that Defendant Martin's Motion to dismiss (Dkt. No. 35) is **GRANTED in its entirety**; and it is further

**ORDERED**, that Docket No. 42 in this case, Defendant Martin's reply, which is incorrectly described in the docket as a Motion to Dismiss, is **MOOT**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:   March 03, 2008
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge