UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MARK E. LYMAN, DIANA LYMAN,

                        Plaintiffs,

     -v.-                            1:06-CV-1109 (LEK/DRH)

CITY OF ALBANY, OFFICE OF
CORPORATION COUNSEL, MAYOR
JERRY JENNINGS, CHIEF JAMES TURLEY,
CHIEF JAMES TUFFEY, LIEUTENANT
DANIEL COLONNO, DETECTIVE BREEN,
DETECTIVE VICTOR E. PIZZOLA,
OFFICER ANTHONY GUINTA, ALBANY
POLICE DEPT., THOMAS MARTIN,
JOHN DOE AND JANE DOE,

                        Defendants.

## MEMORANDUM-DECISION AND ORDER[1]

    Plaintiff Mark Lyman ("Plaintiff" or "Lyman"),[2] an activist affiliated with the Survivors

Network of those Abused by Priests ("SNAP"), brought this case asserting various civil rights

violations stemming from protests in front of the Holy Cross Church in Albany, New York.  On

March 3, 2008, the Court partially granted Defendants' Motions to dismiss, dismissing all claims

and defendants except for Plaintiff's claim against Defendant Pizzola alleging that the post-arrest

search of his vehicle violated the Fourth Amendment.  Order (Dkt. No. 60).  The Court maintained

---

[1] For printed publication by the Federal Reporters.

[2] Lyman's wife, Diana Lyman, is also named in the Complaint as a plaintiff in this matter.
However, the Complaint contain no allegations of injury suffered by Mrs. Lyman and there is
virtually no mention of her in the Amended Complaint.  Accordingly, the claims contained in the
Amended Complaint will be discussed solely with regard to Mr. Lyman.

that claim because there were no allegations or evidence that Plaintiff was arrested shortly after exiting his vehicle.  Order at 8 (Dkt. No. 60).  Currently before the Court is a Motion for summary judgment filed by Defendant Pizzola and a cross-Motion for recusal and reconsideration filed by Plaintiff.  Motion for summary judgment (Dkt. No. 64); cross-Motion (Dkt. No. 74).

## I.    Background

## A.    Compliance with the Local Rules

The facts considered by the Court are primarily based on Defendant's Statement of Material Facts.  Although in the cross-Motion and response, Plaintiff submitted a Statement of Material Facts, it does not comply with the Local Rules.  Local Rule 7.1 requires that in opposing a summary judgment motion, the "non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises."  Id.  More importantly, the Rule states that "[t]he Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  Id. (emphasis in original).  Plaintiff, who is represented by counsel, has failed to specifically controvert Defendant's facts as set forth in the Statement of Material Facts, and failed to provide citations to the record where any factual issues arise or in support of any of the statements set forth by Plaintiff. Therefore, the Court deems Defendant's facts admitted and finds that there are no genuine issues of material fact.[3]

---

[3] Even if the Court were to consider those of Plaintiff's facts which might have support in the record before the Court, those facts are not material.  Only disputes over material facts--facts that might affect the outcome of the suit under the governing law--will properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**B.      Facts**

Plaintiff is the Capital Region Director of SNAP.  Def's Stmt. of Mat. Facts ¶1.  In May

2005, Plaintiff and other members of SNAP began protesting outside the Holy Cross Church in

Albany, New York.  Am. Compl. (Dkt. No. 3) at ¶ 25; State Court TRO (Dkt. No. 61, Attach. 1).

On or about September 6, 2005, the Roman Catholic Archdiocese obtained a temporary restraining

order ("TRO") prohibiting any protests within 100 feet of the church.  Am. Compl. at ¶ 32; State

Court TRO (Dkt. No. 61, Attach. 1).  The boundaries of the prohibited area were designated and

marked on the sidewalk by members of the Albany Office of Corporation Counsel in Plaintiff's

presence.  Am. Compl. at ¶ 42; Lyman Dep. at 97 (Dkt. No. 61, Attach. 5).  On September 11, 2005,

Defendant Colonno of the Albany Police Department walked the boundaries with Plaintiff, to ensure

he was aware of them.  Am. Compl. at ¶¶ 41-42; Lyman Depo. at 19-20.

On April 9, 2006, Officer Guinta observed a dark pickup truck, later determined to be driven

by Plaintiff, double-parked on Brevator Street, across from Holy Cross Church.  Rehfuss Aff. Exh.

E (Guinta Aff.) at ¶ 2 (Dkt. No. 61, Attach. 6); Rehfuss Aff. Exh. F (NYS Incident Report dated

April 9, 2006) (Dkt. No. 61, Attach. 7); Rehfuss Aff. Exh. G (NYS Arrest Report dated April 9,

2006) (Dkt. No. 61, Attach. 8).  After Guinta passed the truck, Plaintiff completed a U-turn and

parked the vehicle inside the boundaries designated by the TRO.  Rehfuss Aff. Exh. E at ¶ 3.  In

completing the U-turn, Plaintiff had used the entrance to the church, therefore also entering into the

boundaries of the TRO.  Rehfuss Aff. Exh. J (Guinta Depo.) at 24 (Dkt. No. 76, Attach. 3).  Officer

Guinta testified that he used his training to determine that Plaintiff was parked within the TRO

boundaries based upon car lengths.  Rehfuss Aff. Exh. J at 23.

Immediately after Plaintiff exited his vehicle, Officer Guinta informed him that he was

parked in violation of the terms and conditions of the TRO and that he would have to move. Rehfuss Aff. Exh. E ¶4; Exh. B at 7.; Exh. C at 8, 24; Exh. D at 86-91; Exh. F; Exh. G.  Plaintiff refused to move his vehicle.  Rehfuss Aff. Exh. E ¶5; Exh. F; Exh. G.  Guinta informed Plaintiff that he would be arrested if he did not move his vehicle.  Rehfuss Aff. Exh. E at ¶6; Exh. C at 8, 24; Exh. D at 86-91; Exh. F; Exh. G.  Plaintiff then walked towards Officer Guinta, further into the TRO boundary.  Exh. E at ¶6.  Plaintiff was then arrested by Guinta for taking a U-Turn within the TRO boundaries and parking his truck within the boundaries.  Rehfuss Aff. Exh. J at 20, ¶20-25. After Plaintiff was arrested, measurements were taken that confirmed that Plaintiff's vehicle was parked within the TRO boundaries.  Rehfuss Aff. Exh. J at 24, ¶9-12.  After Plaintiff's arrest, the Forensics Unit of the Albany Police Department was contacted to search and photograph the contents of Plaintiff's truck before it was towed from the scene.  Rehfuss Aff. Exh. F; Exh. G; Exh. H; Exh. I.  Defendant Detective Victor Pizzola was the member of the Forensics Unit who arrived on the scene to document the contents of the Plaintiff's truck.  Rehfuss Aff. Exh. H; Exh. I.

## II.    Discussion

### A.    Summary Judgment Motion

#### 1.    Standard of Review

A motion for summary judgment is granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995).  The moving party must demonstrate the absence of any material factual issue genuinely in dispute.  Lipton, 71 F.3d at 469.  The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Sista v. CDC Ixis N.

4

Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006).  When the moving party has asserted facts showing that the non-movant's claims cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on the "mere allegations or denials" contained in the pleadings.  Fed.R.Civ.P. 56(e); accord Sista, 445 F.3d at 169.   That is, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586.  To defeat the motion, the nonmovant "must come forth with evidence sufficient to allow a reasonable jury to find in her favor."  Brown v. Henderson, 257 F.3d 246, 251 (2d Cir. 2001) (citation omitted).  Bald assertions or conjecture unsupported by evidence are insufficient to overcome a motion for summary judgment.  Fed. R. Civ. P. 56(e)(2); see Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991); Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).  Only disputes over material facts--facts that might affect the outcome of the suit under the governing law--will properly preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

## 2.    Discussion

The Court notes that Plaintiff was well aware of the pending Motion for summary judgment and was given two extensions to respond to the Motion.  Dkt. Nos. 68, 73.  In his response, however, Plaintiff failed to oppose the substance of Defendant's Motion for summary judgment. See Dkt. No. 74.  Nonetheless, the Court must still examine "the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (citation omitted) ("Even unopposed motions for summary judgment must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.").

5

Plaintiff's remaining claim asserts a violation of his Fourth Amendment right to be free from illegal search and seizure based on the search of his car following his arrest.  Am. Compl. at ¶ 176 (Dkt. No. 3).  An officer is entitled to conduct a search of a vehicle incident to arrest to satisfy both security and evidentiary concerns, whether the suspect was arrested in or next to the vehicle.  United States v. Thornton, 541 U.S. 615, 620-21 (2004) ("[i]n all relevant aspects, the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle.").  Therefore, "so long as an arrestee is the sort of 'recent occupant' of a vehicle . . . officers may search that vehicle incident to the arrest."  Id. 541 U.S. at 623-24.  Thus, as previously noted by the Court, "if Plaintiff's car was within the restricted area or if Plaintiff had occupied the car recently before his arrest, Pizzola likely had probable cause to search Plaintiff's car."  Order at 8 (Dkt. No. 60).

Plaintiff has admitted to exiting the vehicle immediately prior to his arrest.  Rehfuss Aff. Exh. B at 7; Exhibit C at 8, 23-24; Exh. D at 86-91.  The arrest took place within the immediate vicinity of Plaintiff's truck.  Rehfuss Aff. Exh. E at ¶8; Exh. B at 7; Exh. C at 8, 24; Exh. D at 86-91.  The search of the vehicle was therefore proper and not in violation of Plaintiff's Fourth Amendment rights.  See Thornton, 541 U.S. at 623-24.  Defendant has met his burden of demonstrating that no material issue of fact remains for trial and that he is entitled to judgment as a matter of law, and summary judgment is therefore granted.

### 3.    Qualified Immunity

In the alternative, Defendant's summary judgment Motion is granted and the remaining claim against him is dismissed on the basis of qualified immunity.  The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct

does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity "provides ample support to all but the plainly incompetent or those who knowingly violate the law." Burns v. Reed, 500 U.S. 478, 494-95 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

A claim of entitlement to qualified immunity is subject to a three-step analysis. Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211 (2d Cir. 2003). As a threshold matter, it must first be determined whether, based upon the facts alleged, plaintiff has facially established a constitutional violation. Id.; Gilles v. Repicky, 511 F.3d 239, 243-44 (2d Cir. 2007). If the answer to this inquiry is in the affirmative, the court must then turn its focus to whether the right in issue was clearly established at the time of the alleged violation. Id. (citing Saucier v. Katz, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 2156 (2001)); see also Poe v. Leonard, 282 F.3d 123, 132-33 (2d Cir. 2002). Finally, if the plaintiff had a clearly established, constitutionally protected right that was violated, he or she must demonstrate that it was not objectively reasonable for the defendant to believe that his action did not violate such law. Harhay, 323 F.3d at 211; Poe, 282 F.3d at 133 (quoting Tierney v. Davidson, 133 F.3d 189, 196 (2d Cir. 1998) (quoting, in turn, Salim, 93 F.3d at 89)).

In this case, the Court has already determined that Plaintiff has failed to establish a constitutional violation because Plaintiff's arrest occurred immediately after he exited his vehicle and in the immediate vicinity of the vehicle, so that the search was proper under Thornton, 541 U.S. 615. Following Plaintiff's arrest, Defendant Pizzola was contacted to conduct an inventory search of the vehicle pursuant to a request from a street supervisor. Rehfuss Aff. Exh. H; Exh. I; Exh. K.

7

The Court finds that Defendant Pizzola is entitled to qualified immunity because it was objectively reasonable for him to believe that a search of the truck did not violate Plaintiff's rights.

**B.    Motion for Recusal**

Plaintiff has filed a Motion seeking this Court's recusal from the case on two grounds: "Judge Kahn is a former employee of a Defendant, and is alleged to be a close friend of a witness who is adverse to the Plaintiff."  Motion to recuse, Mem. of Law at 2 (Dkt. No. 74).  The Motion also adds that "[t]hese matters were never disclosed and had disclosure occurred, the Plaintiff could have researched other potential conflicts and made this Motion soon [sic]."  Id.

Plaintiff seeks the Court's recusal pursuant to 28 U.S.C. §§ 144 and 455.  Section 144 requires recusal if a judge harbors a "personal bias or prejudice" against a party.  28 U.S.C. § 144.  Similarly, § 455(b)(1) provides for recusal when a judge "has a personal bias or prejudice concerning a party."  28 U.S.C. § 455(b)(1).  Finally, recusal is mandated under § 455(a) when a judge's "impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  In light of the corresponding language used in the two sections, courts have concluded that sections 144 and 455(b)(1) are similar in scope and are to be construed together.  See Apple v. Jewish Hosp. & Med. Ctr., 829 F.2d 326, 333 (2d Cir. 1987).  The standard for recusal under both sections is "whether a reasonable person, knowing all the facts, would conclude that the court's impartiality might reasonably be questioned."  Id.

A recusal decision rests within the sound discretion of the judge whose recusal is sought.  See United States v. Lovaglia, 954 F.2d 811, 815 (2d Cir. 1992) (citation omitted).  In addition, a judge has "an affirmative duty . . . not to disqualify himself unnecessarily."  SEC v. Grossman, 887 F. Supp. 649, 658-59 (S.D.N.Y. 1995) (citing National Auto Brokers Corp. v. General Motors

Corp., 572 F.2d 953, 958 (2d Cir. 1978)).

### 1.    Motion is untimely

A motion to disqualify must be made "at the earliest possible moment" after obtaining

information of possible bias.  United States v. Yonkers Bd. of Educ., 946 F.2d 180, 183 (2d Cir.

1991) (quoting Apple v. Jewish Hosp. & Medical Ctr., 829 F.2d 326, 333 (2d Cir. 1987)); see also

Polizzi v. United States, 926 F.2d 1311, 1321 (2d Cir. 1991) (noting that, while § 455 does not

contain an explicit timeliness requirement, the courts have read such a requirement into the

provision).  This rule serves the dual purpose of preserving judicial resources and preventing a

litigant from hedging its bets against the eventual outcome.  Yonkers Bd. of Educ., 946 F.2d at 183

(citations omitted); Herskowitz v. Charney, 93 Civ. 5248, 1994 WL 455172, at *2, 1994 U.S.Dist.

LEXIS 11594, at *6-7 (S.D.N.Y. Aug. 18, 1994).

In regards to the timeliness of the Motion, Plaintiff states that "[i]t was not until [he]

received the notice of the dismissal of several of the charges regarding this case that [he] became

aware that Judge Kahn was assigned to this case."  Motion to recuse, Lyman Aff. at ¶ 6 (Dkt. No.

74, Attach. 2).  He claims that he "expected that [Magistrate Judge Homer] was to oversee this case

and was very surprised to learn that Judge Kahn would have made what I believe are erroneous,

biased and improper decisions in this case given his relationship with Bishop Howard Hubbard as

well as his previously employment as counsel for the City of Albany Corporation Counsel's Office."

Id.  Plaintiff's confusion is of little consequence since Plaintiff is represented by counsel, who is

presumed to be familiar with the Court's Local Rules and procedure as well as this case's docket.

Plaintiff's counsel states only that "[t]his Motion to recuse was made as soon as the plaintiff learned

of the relationships between the Court, the defendants or witnesses in this case."  Motion to recuse,

9

Aretakis Aff. at ¶ 7 (Dkt. No. 74, Attach. 3).

These claims are unavailing.  Plaintiff's Complaint was filed on September 15, 2006.  Dkt. No. 1.  However, Plaintiff did not file the Motion to recuse until May 23, 2008, over 20 months later.  Dkt. No. 74.  The argument made by Plaintiff's counsel that the Motion was made as soon as Plaintiff learned of the facts is meritless.  Plaintiff's own affidavit claims that he learned "in the 2005 and 2006 time period" that "the Judge was friends with Howard J. Hubbard."  Motion to recuse, Lyman Aff. at ¶ 5.  The Court's employment with the City of Albany Corporation Counsel occurred more than 40 years ago, and the Court's biography is publicly available.

Plaintiff's claim that he was not aware that Judge Kahn was assigned to the case or overseeing the case until the Court's order dismissing certain claims is also meritless.  The case assignment form dated September 15, 2006 lists Judge Kahn as the assigned judge and includes the monthly motion schedule for both Judge Kahn and Magistrate Judge Homer.  Dkt. No. 2 at 10, 11.  Plaintiff's Amended Complaint, filed on November 14, 2006, lists initials "LEK/DRH" in the caption, indicating Plaintiff's awareness that the case will be handled, as assigned, by Judge Lawrence E. Kahn and Magistrate Judge David R. Homer.  Dkt. No. 3.  Finally, Plaintiff sent the Court a letter dated December 28, 2006 by facsimile, which was specifically addressed to Judge Kahn.  Dkt. No. 8.  Plaintiff then received an order signed by Judge Kahn on January 4, 2007 rejecting the faxed submission.  Dkt. No. 8.  There is therefore no good faith basis upon which the Court can find that Plaintiff was not aware that Judge Kahn was the district court judge assigned to and overseeing the case.  Counsel's certification of the recusal Motion is therefore troubling.

Further, the Court notes that the Motion for recusal was made, not only more than 20 months after all relevant information was available to the Plaintiff, but shortly after the Court issued an

10

order dismissing parts of Plaintiff's Amended Complaint.  This delay suggests a misuse of the recusal statute for strategic purposes.  See In re International Bus. Mach. Corp., 45 F.3d 641, 642 (2d Cir. 1995) ("a prompt [recusal] application affords the district judge an opportunity to assess the merits of the application before taking any further steps that may be inappropriate for the judge to take" and "avoids the risk that a party is holding back a recusal application as a fall-back position in the event of adverse rulings on pending matters"); see also E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1295 (9th Cir. 1992) (holding that a recusal motion made after entry of judgment was untimely; "[t]o hold otherwise would encourage parties to withhold recusal motions, pending a resolution of their disputes on the merits, and then if necessary invoke section 455 in order to get a second bite at the apple."); First National Bank of Peoria v. Muller, 851 F.2d 916, 919 (7th Cir. 1988), cert. denied., 490 U.S. 1007 (1989) (holding that movant waived any grounds for making a recusal motion where movant knew the facts at a preliminary hearing and proceeded to trial "without objection and only raised the bias issue after Judge Lipkin verbally announced his ruling unfavorable to Rogers.").

Plaintiff has failed to demonstrate good cause for the delay in seeking recusal.  Further, the belatedness of the attempt cannot be overcome by Plaintiff's meritless argument that he was not aware that Judge Kahn was assigned to the case, since that contention is belied by the record.  Therefore, the Court concludes that Plaintiff's recusal Motion is untimely.  See Apple, 829 F.2d at 334; see also Yonkers Bd. of Educ., 946 F.2d at 183 (finding untimely defendant's motion to disqualify as the facts supporting the motion were available months prior to the actual motion); United States v. Wallach, 788 F.Supp. 739, 742 (S.D.N.Y.) (denying defendant's motion to disqualify on the ground that it should have been made two years earlier), aff'd, 979 F.2d 912 (2d

Cir. 1992).

      **2.**    **The Court's recusal is unnecessary**

In the alternative, the Court also finds that recusal is unnecessary.  To the extent that

Plaintiff implies that the Court's Decision and Order dismissing some of his claims suggests bias,

the Supreme Court has clarified that "judicial rulings alone almost never constitute a valid basis for

a bias or partiality motion." Liteky v. United States, 510 U.S. 540, 555-56 (1994).  Instead, the

Court will focus on the explicit grounds for recusal put forth by Plaintiff.

Initially, the Court notes that Plaintiff's counsel is "hesitant to set out a detailed and specific

outline of what [he] believe[s] are the specific reasons and/or causes for this Court to recuse itself."

Motion to recuse, Aretakis Aff. at ¶ 2 (Dkt. No. 74, Attach. 3).  This hesitation is troubling, but

perhaps understandable given Plaintiff's counsel's past record with recusal motions, which often

followed decisions against his client or decisions calling out his unprofessional behavior in litigation

involving the Church and often followed or resulted in an imposition of sanctions.  See, e.g.,

Zlotnick v. Hubbard, 572 F. Supp. 2d 258, 269 (N.D.N.Y. 2008) (sanctioning Plaintiff's counsel

$12,368.26 and noting that counsel's "baseless" recusal motion "also reflects a repetitive tactic

employed by him").

Plaintiff asserts two grounds for the Court's recusal from the case: "Judge Kahn is a former

employee of a Defendant, and is alleged to be a close friend of a witness who is adverse to the

Plaintiff."  Motion to recuse, Mem. of Law at 2 (Dkt. No. 74).  The Motion also adds that "[t]hese

matters were never disclosed and had disclosure occurred, the Plaintiff could have researched other

potential conflicts and made this Motion soon [sic]." Id.

First, Plaintiff claims that recusal is necessary based on the Court's employment with the

City of Albany Corporation Counsel from 1963 to 1968. 28 U.S.C. § 455(b)(3) specifically addresses the scenario when a judge has previously worked for the government in some capacity. That section states that a judge should recuse himself where he "has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy[.]" 28 U.S.C. § 455(b)(3). This section has no bearing in the current case. Plaintiff has not asserted any basis or even attempted to allege in conclusory terms that the Court's employment with the City of Albany, forty years before the filing of this case, in any way concerned the current proceeding or the merits of the particular case in controversy or that, during that employment forty years ago, the Court participated in the present proceeding or expressed an opinion regarding it. There is thus no basis for recusal under §455(b)(3).

Next, Plaintiff alleges that he was told that the Court is friends with Bishop Howard Hubbard. However, any such social involvement would not lead a reasonable person to question the Court's impartiality because Bishop Hubbard is not a party to this litigation, which stems from Plaintiff's arrest for the violation of a TRO on April 9, 2006. See, e.g., Dkt. No. 47 (granting non-party Hubbard leave to move to quash the subpoena for his deposition). The relevant section, 28 U.S.C. § 455(b)(2), provides for recusal where the judge "has a personal bias or prejudice concerning a party" to the action. However, neither Bishop Hubbard or the Archdiocese are parties to this action or even witnesses. See, e.g., Dkt. No. 53 (granting Hubbard's Motion to quash subpoena for his deposition). At most, Plaintiff claims only that "Bishop Hubbard and his role are central to this case" and that Plaintiff has "been the central antagonist of Bishop Howard Hubbard for three to four years." Motion to recuse, Lyman Aff. at ¶ 8 (Dkt. No. 74, Attach. 2). These

13

unsupported conclusory claims are unrelated to the present proceeding, which is based on claims of

false arrest, malicious prosecution, and illegal search and seizure stemming from Plaintiff's arrest

while protesting in alleged violation of a TRO.  See, e.g., Motion to recuse, Notice of Motion (Dkt.

No. 74) (listing nature of action).  Any connection Bishop Hubbard or the Archdiocese have to this

action is remote, contingent, or speculative at best.  Accordingly, recusal on this ground is not

warranted.

   The Plaintiff's claims of impartiality are not supported by any facts and can, at most, be

described as "remote, contingent or speculative" and are not the type of interest that reasonably

brings the Court's impartiality into question.  See, e.g., In re Drexel Burnham Lambert Inc., 861

F.2d 1307, 1313 (2d Cir. 1988) (stating that when the alleged interest of the judge "is not direct, but

is remote, contingent, or speculative, it is not the kind of interest which reasonably brings into

question a judge's impartiality.").  Recusal is therefore not required and would be inappropriate

under either 28 U.S.C. § 455(b) or § 144.  See also United States v. Bayless, 201 F.3d 116, 127 (2d

Cir. 2000) (explaining that courts determine the appearance of impropriety "not by considering what

a straw poll of the only partly informed man-in-the-street would show[,] but by examining the

record facts and the law, and then deciding whether a reasonable person knowing and understanding

all the relevant facts would recuse the judge").

   Nor is recusal mandated by 28 U.S.C. § 455(a).  As noted above, the test for recusal under

section 455(a) is whether "a reasonable person, knowing all the facts, [would] conclude that the trial

judge's impartiality could reasonably be questioned."  Lovaglia, 954 F.2d at 815.  The Second

Circuit has held that although section 455(a) provides "broader grounds for disqualification" than

either section 144 or section 455(b)(1), "[w]hen . . . a party has not alleged any grounds for recusal

other than those relating to the district court's alleged bias or prejudice, those broader grounds are not implicated." Apple, 829 F.2d at 333.   The Court interprets this language to mean that allegations of bias and prejudice that are insufficient to justify recusal under sections 144 and 455(b)(1) are likewise insufficient to require recusal under section 455(a).  Accordingly, for the reasons articulated, Plaintiff's allegations of bias and prejudice do not warrant recusal under Section 455(a).  Plaintiff has provided no legal, rational or pragmatic reason supporting recusal, and the Court declines to do so.

**C.    Motion for reconsideration**

Initially, the Court notes that this Motion for reconsideration is untimely.  Pursuant to N.D.N.Y. Local Rule 7.1(g), a motion for reconsideration must be filed "no later than **TEN CALENDAR DAYS** after the entry of the challenged judgment, order, or decree."  (emphasis in original).  The challenged Order was issued on March 3, 2008.  Dkt. No. 60.  The Motion for reconsideration was not filed until May 23, 2008 (more than 80 days after the filing of the Order). Dkt. No. 74.  Plaintiff has not presented any reason for the delay.  Accordingly, the Motion for reconsideration is appropriately denied as untimely.  Nevertheless, the Court will also consider the merits of the Motion.

A strict standard governs motions for reconsideration.  They "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked--matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir.1995).  The burden on a party moving for reconsideration of an order is thus substantial.  Toland v. Walsh, No. 9:04-CV-0773, 2008 WL 657247, at *1 (N.D.N.Y. Mar. 7, 2008).  There are only three possible grounds upon which motions

15

for reconsideration may be granted: (1) an intervening change in law, (2) the availability of evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice. Shannon v. Verizon New York, Inc., 519 F.Supp.2d 304, 307 (N.D.N.Y. 2007) (citing Doe v. New York City Dept. of Social Servs., 709 F.2d 782, 789 (2d Cir. 1983). Plaintiff apparently relies on the third of these factors.

Plaintiff's memorandum of law in support of reconsideration cites no law or facts in support, and appears to be based solely on the proposed recusal of the Court, under the claim that if the Court should have recused itself previously, then reconsideration or vacature of the prior order is warranted. See, e.g., Motion to recuse, Mem. of Law at 5 (Dkt. No. 74) ("if recusal is and was appropriate at the time of the dismissal, then the dismissal should be vacated."). Because recusal is unwarranted, reconsideration or vacature on this ground is also unwarranted and the Motion is denied.

The Court notes that Plaintiff also states in his affidavit, although without the support of any law, facts, or argument in the memorandum of law, that he is "asking for the Court to vacate prior dismissals [sic] based upon the previous testimony of Albany Police Officer Anthony Guinta who stated that he arrested [Lyman] because 'he guessed' [Lyman] was inside the boundary [of the TRO]". Motion to recuse, Lyman Aff. at ¶ 11 (Dkt. No. 74, Attach. 2).[4] However, Plaintiff does not present any transcripts or other testimony to support this characterization of Guinta's testimony, which is contradicted by other evidence establishing that Guinta estimated the relevant distance based on car lengths. Even if Officer Guinta's estimate was described in another context as a

---

[4] Plaintiff does not elaborate on this claim but instead goes on in the same paragraph to add that "[m]y belief is that had recusal occurred, or if the Court recuses itself, then the dismissal would not have occurred or should be vacated." Id. at ¶ 11.

"guess" based on car lengths rather than an "estimate," this is not the sort of new evidence "that might reasonably be expected to alter the conclusion reached by the court."  Shrader, 70 F.3d at 257.

As to the Court's ruling on the Motion to dismiss, there is no clear error or manifest injustice, and Plaintiff does not even attempt to point the Court to any clear error or manifest injustice.  The Court found that Plaintiff had failed to sufficiently allege several of the causes of action.  For example, the Court found that Plaintiff's claims for violation of Title VII of the Civil Rights Act of 1964 should be dismissed because Plaintiff did not allege any employment connection with any of the Defendants in the case.  Order at 3-4 (Dkt. No. 60).  Plaintiff's First Amendment retaliation claims were dismissed because he failed to make factual allegations linking his exercise of a First Amendment right to his arrest on April 9, 2006 for violation of the TRO or to the alleged videotaping.  Id. at 5.  Plaintiff's generalized allegations of conspiracy were dismissed due to, inter alia, a lack of any supporting factual allegations.  Id. at 6-7.  Plaintiff's Section 1983 claims were similarly dismissed because they were based on only conclusory allegations and did not contain sufficient supporting factual allegations to "raise a right to relief above the speculative level."  Order at 8-10 (citing Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)).  Finally, the Court declined to exercise pendant jurisdiction over the remaining state claims.  Id. at 12-13.

Accordingly, Plaintiff has not established any "exceptional circumstances" under which reconsideration is warranted, and the motion must be denied.  See Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986).

**III.    Conclusion**

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendant Pizzola's Motion for summary judgment (Dkt. No. 61) is

17

**GRANTED in its entirety**; and it is further

ORDERED, that Plaintiff's cross-Motion for recusal, reconsideration, and/or vacature (Dkt.

No. 74) is **DENIED in its entirety**; and it is further

ORDERED, that Plaintiff's only remaining claim in the Amended Complaint (Dkt. No. 3)

against Detective Victor E. Pizzola, in his individual capacity, is **DISMISSED**; and it is further

ORDERED, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.

DATED:       February 13, 2009
             Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge